IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18-CR-20014 |
| | ) | |
| MICHAEL HARI, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S
MOTION TO CONTINUE**

NOW COMES the Defendant, MICHAEL HARI, by and through his attorneys, and files his Response to the Government's Motion to Continue.

The government's motion to continue is an attempt to manipulate the Speedy Trial Act. The Court should reject the attempt. Mr. Hari's speedy trial clock began running with the filing of the indictment on April 4, 2018. The government cannot stop that clock by unilaterally moving Mr. Hari to another district. This is especially true given that the United States Attorney's office in Minnesota ordered Mr. Hari moved pursuant to 18 U.S.C. § 3621(d), a statute that address "Imprisonment of a convicted person." Mr. Hari is not a convicted person and should never have been moved from the Central District of Illinois.

PROCEDUREAL HISTORY

On March 13, 2018, the government filed criminal complaints against Mr. Hari in both Illinois and Minnesota. *United States v. Hari*, Case No. 18-CR-20014 (C.D. Ill.) (R.1);

1

*United States v. Hari*, Case No. 18-cr-150 (D.Minn. d/e 1).[1] On April 4, 2018, an indictment was filed against Mr. Hari in Illinois. (R.32) The filing of the indictment started the speedy trial clock. 18 U.S.C. § 3161(c)(1). Thereafter, the government had 70 days to bring Mr. Hari to trial.

The government knew Mr. Hari's speedy trial clock and started in Illinois and, therefore, knew the trial in Illinois would take place before the trial in Minnesota. Normally, an indictment must be filed within 30 days of the arrest on a criminal complaint. 18 U.S.C. § 3161(b). In Minnesota the parties filed a Joint Motion for Extension of Time for Filing Indictment or Information agreeing to give the government 60 additional days to file an indictment in Minnesota. (D.Minn. d/e 12). In the motion the parties told Judge Frank Mr. Hari was "detained in the Central District of Illinois on the Illinois complaint, 18 MJ-7062-EIL. *Pursuant to Court Order, [he] will remain in Illinois pending disposition of [his] case in the Central District of Illinois.*" (D.Minn. d/e 12) (emphasis added). The joint motion went on to say, "[d]ue to the complexity of the cases pending in each district, the distance between counsel and their clients, *and the understanding that the defendants will not be brought to Minnesota until the Central District of Illinois cases are resolved*, the parties seek an additional 60-day extension to bring the matter before the grand jury or file an Information in Minnesota pursuant to l8 U.S.C. § 3161(b)." *Id*. (emphasis added). Judge Frank granted the motion and on June 20, 2018, an indictment was filed against Mr. Hari in the Minnesota case. (D.Minn. d/e 14).

---

[1] Citations to filings in this case are "(R.__)." Citations to filings in the Minnesota case are "(D.Minn. d/e __)."

In Illinois, a superseding indictment was filed against Mr. Hari and his codefendants, adding additional charges. (R.39). In the following months Mr. Hari and his counsel in both Illinois and Minnesota attempted to reach a joint resolution of the two cases with the government. Codefendants, McWhorter and Morris did reach plea agreements with the government, agreeing to have their Illinois cases transferred to Minnesota for a joint resolution. (R.60) (TEXT ORDER 11/08/2018). By January 2019, it became clear Mr. Hari and the government would not reach a joint resolution of the cases. Accordingly, at a January 9, 2019, status conference the parties informed the Court that Mr. Hari would be going to trial and asked for a date certain some time in the summer due to AUSA Miller and AFPD Pollock being scheduled for trial in *United States v. Christensen*, 17-cr-20037 in April and May 2019. The Court obliged, setting a trial date of July 15, 2019. (Minute Entry dated 01/09/2019).

On the morning of January 31, 2019, defense counsel learned from Mr. Hari that the United States Marshals Service had attempted to move him to Minnesota but the move had been cancelled due to inclement weather. (R.63). Consultation with the Marshals revealed the United States Attorney's office in Minnesota "had issued paperwork to transfer Mr. Hari to Minnesota." *Id*. Defense counsel received no advance notice of the government's plan to move Mr. Hari. *Id*. Mr. Hari filed an Emergency Motion to Stop Transportation of The Defendant to the District of Minnesota but the Court denied the motion. (R.63, TEXT ORDER 01/31/2019). Mr. Hari was subsequently moved to Minnesota.

On May 20, 2019, the Court held a status conference. (Minute Entry 03/01/2019). At the status conference Mr. Hari stated his intention to go to trial on July 15, 2019, and his decision to file no pretrial motions or take any action that would toll the speedy trial clock. The government stated its position that the trial in Minnesota should proceed first and that since Mr. Hari had been moved to Minnesota the time he was in Minnesota was excludable from the speedy trial clock in this case pursuant to § 3161(h)(1)(B). Mr. Hari expressed his position that the government's reading of the Act was incorrect. The Court informed the parties of its intent to set a joint status conference with Judge Frank and all counsel sometime in June. (Minute Entry 01/01/2019). The Court ordered the government to brief the speedy trial issue and Mr. Hari to respond. *Id*.

On May 20, 2019, the government filed a "Motion to Continue Trial Date Pending Trial in the District of Minnesota on Other Charges Against the Defendant." (R.67). As it did at the status conference, the government argues that since Mr. Hari has been moved to Minnesota the speedy trial clock in this case is tolled pursuant to 18 U.S.C. § 3161(h)(1)(B). The government is wrong.

ARGUMENT

A.     Judicial Estoppel

To convince Mr. Hari to agree to an extension of time to file an indictment against him in Minnesota the government affirmatively told Mr. Hari, and the court in Minnesota, that "Pursuant to Court Order, [Mr. Hari] will remain in Illinois pending disposition of [his] case in the Central District of Illinois." (D.Minn. d/e 12). The

agreement was based on "the understanding that the defendants will not be brought to Minnesota until the Central District of Illinois case[] [is] resolved . . . ." *Id*. Having obtained the benefit of its bargain, the government later changed its tune.

On January 22, 2019, Assistant United States Attorney Julie E. Allyn and United States Attorney Erica H. MacDonald executed a "Request of United States Attorney for Production of Federal Prisoner In the Custody of The United States Pursuant to Title 18, United States Code, Section 3621(d)." Exhibit A. That form directed the Marshals Service to produce Mr. Hari in St. Paul, Minnesota "forthwith" to appear in *United States of America v. Michael Hari, et.* Al, Criminal No. 18-CR-150 (DWF/TNL)." *Id*.

The transfer order not only ran counter to the government's prior commitment that Mr. Hari would be tried in Illinois before being moved to Minnesota, it was improper. Title 18 U.S.C. § 3621(d) only applies to sentenced defendants. That section is entitled "Imprisonment of a convicted person" and is contained in Chapter 229 of Title 18 which is entitled "POSTSENTENCE ADMINISTRATION." The statute has eight subparts dealing with different aspects of executing a sentence of imprisonment. Subsection (d) states, "The United States Marshal shall, without charge, bring a prisoner into court or return him to a prison facility on order of a court of the United States or on written request of an attorney for the Government." Mr. Hari is not a sentenced prisoner, he is a pretrial detainee, in detention based on a detention order entered by United States Magistrate Judge Long. (R.11). A fact the government recognized when it filed the joint motion for more time to file the Minnesota indictment. Accordingly, § 3621(d) did not authorize Mr. Hari's move to Minnesota.

"The doctrine of judicial estoppel is intended to protect the integrity of the judicial process. *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). It is an equitable concept providing that a party who prevails on one ground in a lawsuit may not in another lawsuit repudiate that ground. *United States v. Hook*, 195 F.3d 299, 306 (7th Cir.1999), *cert. denied*, 529 U.S. 1082, 120 S.Ct. 1707, 146 L.Ed.2d 510 (2000). Judicial estoppel may apply when (1) the later position is clearly inconsistent with the earlier position; (2) the facts at issue are the same in both cases; (3) the party to be estopped convinced the first court to adopt its position; and (4) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *United States v. Christian*, 342 F.3d 744, 747 (7th Cir. 2003).

Under the Speedy Trial Act, the government in the Minnesota case had 30 days from Mr. Hari's arrest to seek an indictment. 18 U.S.C. § 3161(b). To gain Mr. Hari's agreement to for additional time to file an indictment, and to convince Judge Frank to grant additonal time, the government took the position that "Pursuant to Court Order, [Mr. Hari] will remain in Illinois pending disposition of [his] case in the Central District of Illinois. (D.Minn. d/e 12). The government further told Mr. Hari and Judge Frank, "[d]ue to the complexity of the cases pending in each district, the distance between counsel and their clients, *and the understanding that the defendants will not be brought to Minnesota until the Central District of Illinois cases are resolved*, the parties seek an additional 60-day extension to bring the matter before the grand jury or file an Information in Minnesota pursuant to l8 U.S.C. § 3161(b)." The government went on to

tell Judge Frank the "extension will serve the interests of the Defendants, the public, and justice. In addition, an extension will promote judicial economy." *Id*.

Judge Frank granted the joint motion to extend the time for filing an indictment. (D.Minn. d/e 13) Judge Frank based his ruling on a finding "that the ends of justice served by granting the parties' joint motion outweigh the best interests of the public and the Defendant in a speedy trial" on the government's representations in the joint motion. *Id*.

The government's position in its motion to continue that the Minnesota trial must proceed before the Illinois trial is clearly inconsistent with the position it took before Judge Frank when it sought and obtain additional time to file an indictment in Minnesota. Furthermore, the facts at issue are the same in both the Illinois and Minnesota cases. The government convinced Judge Frank to adopt its position, and the government's position imposes an unfair detriment on Mr. Hari (delaying his speedy trial in Illinois) if not estopped. *Christian*, 342 F.3d at 747. Accordingly, the government should be judicially estopped from arguing that Mr. Hari's trial in Minnesota should proceed before his trial in Illinois.

B. The Speedy Trial Act

The Speedy Trial Act, 18 U.S.C. § 3161, et seq., guarantees a defendant the right to be tried within 70 days "from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). Because Mr. Hari appeared before Magistrate Judge Long on a criminal

7

complaint before the filing of the indictment, the filing of the indictment on April 4, 2018, started the 70 day speedy trial clock running. *United States v. Owokoniran*, 840 F.2d 373, 374 (7th Cir. 1987) (if defendant has previously appeared before a judicial officer filing of indictment starts speedy trial clock).

Fifty-one days later, when Mr. Hari requested a continuance on May 25, 2018, the speedy trial clock was tolled. 18 U.S.C. § 3161(h)(7)(A); (Minute Entry 05/25/2018) The speedy trial clock has remained tolled, Minute Entries 07/27/2018, 11/05/2018, 01/09/2019, and will begin running again on July 15, 2019.

The government's argument that its unilateral move of Mr. Hari from the Central District of Illinois to the District of Minnesota tolls the speedy trial clock until the trial in Minnesota is complete misreads 18 U.S.C. § 3161(h)(1)(B). Under the facts of this case, § 3161(h)(1)(B) tolls the speedy trial clock in Minnesota due to Mr. Hari's trial in the Central District of Illinois, not the other way around.

The Seventh Circuit explained how the Act works in these situations in *United States v. Montoya*, 827 F.2d 143 (7th Cir. 1987). In that case the defendant was the target of a federal drug investigation in the Northern District of Illinois but fled to Columbia before he could be apprehended. *Id.* at 146. About a year later when the defendant returned to the United States a criminal complaint was filed against him in the Northern District of Illinois and an arrest warranted issued. *Id.* A few days later the defendant was arrested on the warrant in Western District of Texas. A complaint was filed against the defendant in the Western District of Texas for separate drug offenses and an indictment was filed the next day. *Id.* A few days later the defendant made his

initial appearance in Texas and during that hearing he received an explanation of the Illinois charges. The judge stayed the defendant's removal from Texas.

About three months later, specifically 101 days after the defendant's arrest, an indictment was filed against the defendant in the Northern District of Illinois. *Id*. The defendant eventually pled guilty and was sentenced in Texas and then transported to the Northern District of Illinois. *Id.*

The defendant filed a motion to dismiss the Illinois charges claiming a violation of the Speedy Trial Act because his indictment was not filed within 30 days of his arrest on the criminal complaint. *Id*. 147. The Seventh Circuit rejected the argument finding 100 of the 101 days of delay excludable under § 3161(h)(1)(D) since the delay was due to the Texas charges pending against the defendant. *Id*. at 149. The Seventh Circuit found § 3161(h)(1)(D) excluded all time the defendant was pending trial in Texas, including the time negotiating his guilty plea and pleading guilty. *Id*.

In explaining its holding the Seventh Circuit explained how the Speedy Trial Act and specifically § 3161(h)(1)(D) works to protect a defendant's speedy trial rights when charges are pending in multiple districts.

> While Montoya was being held in Texas the Western District of Texas was required to indict Montoya within thirty days of his arrest and bring him to trial within seventy days of the indictment. Montoya's right to a speedy trial was protected. He was guaranteed that within 100 days of his arrest he would be tried. At the conclusion of his Texas trial he would then be available and ready to defend the charges against him in Illinois. Alternatively, if the Western District of Texas did not try Montoya within 100 days, Montoya would be entitled to have that indictment dismissed under section 3162 of the Speedy Trial Act. He then would be available and ready to defend himself against the Illinois charges. Under either scenario, Montoya would not be languishing in a Texas prison or

9

otherwise awaiting trial indefinitely, but would be moving toward final resolution of the Texas charges so that he could go on in a timely fashion to defend himself against the Illinois charges.

*Montoya*, 827 F.2d 149.

*Montoya* makes clear Mr. Hari's the Speedy Trial Act protects Mr. Hari's right to a speedy trial in Illinois by staying tolling the speedy trial clock in Minnesota. The government's interpretation of § 3161(h)(1)(D) warps the protections of the Act. Under the government's reading of the Act it can allow 99 days to pass from the arrest of a defendant on a criminal complaint, file a criminal complaint against the defendant in another judicial district, unilaterally move the defendant to the other district and receive another 100 days to proceed to trial in that district. Alternatively, the government could bounce the defendant between districts at its whim to toll the speedy trial clock in either district as needed. The government cites no authority in support of its reading of the Act. This is not surprising as *Montoya* makes clear the government's reading of the Act is wrong.

The Act addresses the lawful transfer of a defendant to another judicial district in § 3161(h)(1)(E). That section excludes from the 70 day clock "delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure." The government's reading of § 3161(h)(1)(D) makes § 3161(h)(1)(E) surplusage. If the government has the power to unilaterally move a pretrial detainee from district to district and thereby stop the speedy trial clock, there is no need to invoke the Rules of Criminal Procedure to transfer the defendant and § 3161(h)(1)(E) is meaningless. When interpreting a statute it

10

is a court's duty "to give effect, if possible, to every clause and word of a statute rather than to emasculate an entire sections, as the Government's interpretation requires." *United States v. Menasche*, 348 U.S. 528, 538-39 (1955) (internal quotation marks and citations omitted).

Finally, the government is correct that when a party asks for a continuance § 3161(h)(7)(B)(iv) tells a court one factor to consider is whether a failure to grant a continuance will "unreasonably deny the defendant or the Government continuity of counsel." The July 15, 2019, trial date was selected at a time when the trial in *United States v. Christensen*, Case No. 17-20037 was set for April 3, 2019. It was anticipated the *Christensen* trial would be concluded by the end of May giving government and defense counsel time to prepare for the July 15, 2019, trial date. The *Christensen* trail was later continued to June 3, 2019, at the defense's request. Accordingly, the Court may consider these facts in ruling on the government's motion.

The *Christensen* trial is estimated to last six to eight weeks, putting its conclusion in late July. At previous status conferences the government has declined to join in Mr. Hari's motion to continue, stating it was ready for trial. Since the government is ready for trial in this case, and the *Christensen* case will be concluded by the end of July, the government should not need a lengthy continuance of the trial date to ensure continuity of counsel.

CONCLUSION

Long ago the Seventh Circuit acknowledged the reality that the government can attempt to manipulate the Speedy Trial Act. *United States v. Owokoniran*, 840 F.2d 373,

375 (7th Cir. 1987). The court made clear that "[w]ere such an abuse to occur, [it was] confident of the ability of the district courts (and the courts of appeal should that be necessary) to deal with it within the framework of the Act." *Owokoniran*, 840 F.2d at 375. The parties in this case engaged in extensive negotiations trying to find a joint resolution of the Illinois and Minnesota cases. When those attempts were unsuccessful and a firm trial date set in Illinois the government unilaterally moved Mr. Hari using a process applicable to sentenced defendants. Then, having told Judge Frank in Minnesota Mr. Hari would remain in custody in Illinois until the conclusion of the trial on the Illinois charges, the government filed a motion to continue before this Court claiming Mr. Hari must remain in Minnesota until the conclusion of trial on those charges. Those are not the actions of a party acting in good faith. This Court should deal with the government's attempt to manipulate the Speedy Trial Act by denying its request to continue the Illinois trial until the conclusion of the Minnesota trial. Instead, the Court should grant a short continuance to allow government counsel to conclude the *Christensen* trial.

    Respectfully submitted,

| | |
|---|---|
| /s/Elisabeth R. Pollock | /s/ Thomas W. Patton |
| Assistant Federal Defender | Federal Public Defender |
| 300 West Main Street | 401 Main Street, Suite 1500 |
| Urbana, IL 61801 | Peoria, IL 61602 |
| Phone: 217-373-0666 | Phone: 309-671-7891 |
| FAX:   217-373-0667 | Fax:    309-671-7898 |
| Email: Elisabeth_Pollock@fd.org | Email: Thomas_Patton@fd.org |

CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorney Eugene L. Miller. A copy was also mailed to the defendant.

/s/Thomas W. Patton
Federal Public Defender
401 Main Street, Suite 1500
Peoria, IL 61602
Phone: 309-671-7891
Fax:     309-671-7898
Email: Thomas_Patton@fd.org