IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18-CR-20014 |
| | ) | |
| MICHAEL HARI, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO TRANSFER PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 21**

NOW COMES the Defendant, MICHAEL HARI, by and through his attorneys, and files his Motion to Transfer Pursuant to Federal Rule of Criminal Procedure 21.

**I. Introduction**

Pursuant to Rule 21 of the Federal Rules of Criminal Procedure (FRCrP), Defendant Michael Hari moves for inter-district transfer of the this matter to the District of Minnesota for trial. The reasons are set forth below, beginning with the factual-procedural background followed by the discussion of law.

**II. Background**

The Court is familiar with the charges and allegations in the above case, as well as the related proceedings now running apace in the District of Minnesota. But for purposes of contextual grounding, the salient background may be summarized as follows.

At present, Mr. Hari stands charged with a number of related offenses in two federal judicial districts—this Court and the District of Minnesota. The charged offenses

1

in the two cases (referred to herein as "Minnesota Case" and "Illinois Case")[1] may be summarized as:

| Ct. # | Description | Statute(s) |
|---|---|---|
| **Minnesota Case:** *U.S. v. Hari, et al.*, Crim. No. 18-150 (D. Minn.) | | |
| 1 | Damaging religious real property because of religious character | 18 U.S.C. § 247(a)(1) |
| 2 | Obstructing free exercise of religious beliefs by force or threat | 18 U.S.C. § 247(a)(2) |
| 3 | Conspiracy to commit federal felonies via fire/explosives | 18 U.S.C. § 844(h)&(m) |
| 4 | Carrying or using destructive device - crimes of violence | 18 U.S.C. § 924(c)(1)(B)(2) |
| 5 | Possession of unregistered destructive device | 26 U.S.C. §§ 5845(a) & 5861(d) |
| **Illinois Case:** *U.S. v. Hari, et al.*, Crim. No. 18-20014 (C.D. Ill.) | | |
| 1 | Unlawful possession of machine gun | 18 U.S.C. § 922(o) & 924(a)(2) |
| 2 | Conspiracy to interfere with commerce by threats and violence | 18 U.S.C. § 1951 |
| 3 | Attempted arson | 18 U.S.C. § 844(i) |
| 4 | Unlawful possession of firearm | 18 U.S.C. § 922(g)(1) |

Of particular interests for purposes of the present motion, in the Illinois Case now pending before this Court, the government alleges the Defendants—comprised of Mr. Hari, Joe Morris, Michael McWhorter, and Ellis Mack—"formed a militia group that eventually identified itself as the 'White Rabbits.'" (IL #39 at 2). According to the government's stated theory, this purported "militia group" was formed in August 2017 and constituted an illegal conspiracy. (IL #39 at 2-3). The assertion is the White Rabbits group was principally based out of the Illinois municipality called Clarence, and from there traveled by automobile to various places to perform "jobs." (IL #39 at 3). The "jobs" at issue, it is claimed, were "criminal acts" designed to further the goals of the White Rabbits group. (IL #39 at 2-3).

---

[1] Because this Motion involves cases docketed in two separate federal judicial districts, pleadings filed in this Court will be cited as "IL #__," and those filed in the District of Minnesota will be cited as "MN #__".

According to the allegations in the indictment, the "jobs" would take group members to distant municipalities and across state lines, *e.g.*,

| "Job" | Approx. Date | Approx. Travel Distance |
|---|---|---|
| Robbing WalMart store in Watseka, IL | December 2017 | 35 miles |
| Robbing WalMart store in Mount Vernon, IL | December 2017 | 180 miles |
| Robbing individuals in Ambia, IN | December 2017 | 25 miles (state line crossing) |
| Damaging railway tracks in Effingham, IL | January 2018 | 110 miles |

(IL #39 at 3-4). Beyond this, the indictment alleges that unlawful firearms possession from October 2017 to February 2018. (IL #39) and an attempt to damage "by means of fire and an explosive" a building called the Women's Health Practice located in Champaign. (IL #39 at 4). It is clear that the government's theory is that these alleged acts were all in service of the purported goals of the White Rabbits group. (*See, e.g.,* MN #133 at 13).

Moreover, according to the government's acknowledged theory of the case, so too was the alleged placement and detonation of an explosive device at the Dar al Farooq Islamic Center in Bloomington, Minnesota. (*See, e.g.,* MN #133). This last allegation makes no explicit appearance in the charging document filed in this Court, (IL #39), but is at the core of the indictment at issue in the Minnesota Case, (MN #14).

All of the above alleged acts, the government has claimed, stem from the White Rabbits group and its espoused goals, *i.e.*, a hypothesized "ongoing, months-long, multi-state, criminal campaign of bombings, home invasions, and armed robberies (carried out with illegal, fully-automatic infantry assault rifles) perpetrated by an organized domestic terrorist organization." (MN #133 at 13).

This description of the relationship between the Illinois Case and the Minnesota Case is cemented by examining the plea agreements entered by co-defendants Michael

3

McWhorter and Joe Morris. (MN #43 & #44). These agreements are cross-captioned with the case numbers of both the Illinois Case and Minnesota Case, so as to resolve both matters all in one swoop. (MN #43 & #44). And the recitation of agreed-upon "facts" (largely disputed by Mr. Hari), makes plain that the government believes and will seek to prove that all the above alleged acts involved a single conspiracy, manifested in the form of the claimed White Rabbits group based in Clarence, but traveling to "jobs" all over the region and across state boundary lines. (*See, e.g.,* MN #44 at 3-9).

Although the government plainly intends to offer a presentation to the effect that Illinois was the operational core of all the above activity, it is the Minnesota Case which is scheduled for trial first, set to begin on February 18, 2020. (MN #138). The Illinois Case in this Court is currently scheduled for a March 2020 trial. (IL Docket, 12/3/2019). As explained below, the dual-trial track is duplicative, inefficient, and prejudicial. On this basis, Mr. Hari hereby moves to transfer all charges for trial in Minnesota.

### III. Discussion[2]

FRCrP 21(b) permits inter-district transfers of criminal proceedings for the convenience of interested actors and/or in the interest of justice:

> Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice.

---

[2] With respect to all quotations taken from cited legal authorities, this text omits internal punctuation and citations unless otherwise indicated herein.

The accompanying notes, Adv. Comm. Notes (1966), recognize the parallels to the civil transfer statute, 28 U.S.C. § 1404, as well as the leading case on the topic, *Platt v. Minn. Min. & Mfg. Co.*, 376 U.S. 240 (1964).

Coincidentally, the *Platt* case also involved the proposed transfer of criminal proceedings from a federal judicial district in Illinois, to a federal district in Minnesota. 376 U.S. at 242-44. Herein, the Supreme Court identified and promulgated a number of factors "pertinent in the determination of whether the case should be transferred . . . in the interest of justice" under FRCrP 21(b): (1) location of defendant; (2) location of possible witnesses; (3) location of events; (4) location of documents and records; (5) disruption of defendant's business; (6) expense to parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of districts involved; (10) "any other special elements which might affect the transfer." 376 U.S. at 243-44. "No one of these considerations is dispositive," and it is for the district court "to strike a balance and determine which factors are of greatest importance." *United States v. Morrison,* 946 F.2d 484, 489 n.1 (7th Cir. 1991).

The *Platt* decision was issued in 1964, and since that time a number of developments and advancements have neutralized a number of the above factors in most cases, including this one. For example, in this digital age, the location of documents and records carries little weight, since thousands of documents can be transferred instantaneously via electronic means. And in this case, in which Mr. Hari has been under pretrial detention for well over a year, the location of the defendant and/or his business interests is of no consequence. Nor is the location of counsel, where the government is

5

represented by the Department of Justice (including the involvement of prosecutors from Main Justice in the District of Columbia), and the defendant is represented by federal defender organizations in the two jurisdictions. Docket condition is seemingly of marginal relevance as well, in this age of efficiency and cooperation amongst federal courts.

That leaves these *Platt* factors, which would appear most pertinent here: (A) location of witnesses and accessibility of venue; (B) location of events; (C) expense; (D) "other special elements."

### A. Location of witnesses and accessibility of venue

At first blush, one might assume that this factor would cut against a transfer, since many of the witnesses in this case reside in Illinois. But as noted above, in this case the government has elected to proceed with the Minnesota Case first, meaning that the government has already considered these kinds of logistics and fully expect that many (if not all) of these witnesses will be available to participate in a trial conducted at the federal courthouse in Minnesota. Moreover, the Minnesota Case will be tried in the Twin Cities metropolitan area, which contains more-than-adequate options for lodging and transit of all witnesses. Hence, due to the government's chosen timing and order of trial, this factor actually strongly favors a transfer to Minnesota.

### B. Location of events

It is true that many of the persons and events at issue in this case have a connection to the State of Illinois, and in particular to the counties which comprise the Central District of Illinois. That being said, as discussed earlier, the government's theory is that

6

the defendants would travel outside those same Illinois counties to accomplish "jobs" claimed to be objectives of the alleged conspiracy. The claimed travel would extend in to Illinois counties found in the Southern District of Illinois, for example. But also to municipalities located in federal judicial districts in other states, such as Indiana and, as relevant here, Minnesota. The point is that this is not a quintessentially Central District of Illinois case, but rather a case touching multiple states and judicial districts.

Moreover and as already mentioned, the Minnesota Case is going to trial first, and all of those Illinois events will be hashed out in great detail during the course of that trial. Hence, under the present procedural scenario, this factor is neutral at best.

C. **Expense**

As already mentioned, the forthcoming trial in Minnesota will involve an extensive presentation of evidence—including multiple witnesses, documents, physical objects, and so on—about the above alleged events in Minnesota and Illinois. Trial of the charges in the Illinois Case would involve the same witnesses. The same documents. The same physical objects. Essentially the same evidentiary presentation. This is a needless duplication of effort, and needless expense. This factor heavily favors transfer to Minnesota.

D. **Other elements**

When considering the catch-all "other elements" factor, courts have frequently looked toward the practicalities of litigation as well as sensible judicial economy. For example, whether the proposed transfer will effect or avoid "multiplication of litigation," resulting in "inconvenience to the witnesses involved as well as considerable expense."

*Morrison*, 946 F.2d at 489. Or whether alleged co-conspirators will be tried together. *See id.* Or whether some alleged co-conspirators have already pleaded guilty in a particular district. *See, e.g., United States v. Smallwood,* 293 F.Supp.2d 631, 640 (E.D. Va. 2003). When applied to this case, all of these concepts cut strongly in favor of a transfer to Minnesota.

*(1). Multiplication of proceedings.* Here, the government has made clear it prefers the Minnesota case proceed first and Mr. Hari agrees. A successive trial in Illinois would cover much the same ground, and would thus constitute an unnecessary "multiplication of litigation," resulting in "inconvenience to the witnesses involved as well as considerable expense." *Morrison,* 946 F.2d at 489. This alone favors a transfer to Minnesota.

*(2). Overlapping evidentiary presentations.* Related the above point, it has frequently been observed that alleged conspiracy cases typically ought to be tried jointly, "especially where the proof of conspiracy overlaps" amongst the defendants and charged counts. *United States v. Hawkins*, 796 F.3d 843, 861 (8th Cir. 2015). Here, the evidence presented will overlap substantially. Presumably, witnesses would offer precisely the same testimony in the proposed two separate trials. Two different jury panels will be called upon to hear this evidence and render two separate verdicts. Precious court resources in two different federal districts will be expended to oversee these overlapping cases. From an efficiency perspective under these particular and unusual circumstances, consolidating these matters when this option is available such that all the evidence can be presented and all the issues decided in a single court seems reasonable.

*(3). Single tribunal for co-defendants.* Also at the government's urging, Mr. Hari's co-defendants have pled guilty in the Minnesota district court, and will be sentenced there as well. As the above authorities indicate, this cuts in favor of a transfer of Defendant's Hari's case to Minnesota for trial, so that the same tribunal is able to evaluate (and, if appropriate, sentence) all co-defendants. This is preferable in the criminal law for many reasons, *e.g.*, encourages a full understanding the entire case, allows judicial officer to determine relative culpability amongst the defendants, minimizes the potential for unwarranted sentencing disparities, and so on.

*(4). Presumption of joinder.* The above points are encapsulated in a legal principle governing joinder in alleged conspiracy cases like the one at hand, *i.e.*, "there is a presumption that participants in a conspiracy or other criminal schemes should be tried together, not only to economize on judicial and prosecutorial resources but also to give the jury a fuller picture of the scheme." *United States v. Cardena*, 842 F.3d 959, 981 (7th Cir. 2016). Here, the government and at least two co-defendants claim that a conspiracy existed and that Mr. Hari was a part of it. The best and most comprehensive way for a fact-finder to resolve the question is to be presented with *all* the relevant evidence and issues for resolution. This can only be accomplished by transfer and joinder, which is being requested here.

*(5). Prejudical severance.* In effect, the current procedural posture constitutes a severance of charged counts, with one set of counts to be tried in the Minnesota Case and another set in the Illinois Case. The *de facto* severance (which can be cured with a transfer-and-joinder as proposed herein) is prejudicial to Mr. Hari for a number of reasons.

9

First, it is the understanding of the defense that in the Minnesota Case, the government intends to offer an Other-Acts evidentiary presentation, *see, e.g.,* FRE 404(b), involving many of the allegations in the Illinois Case and perhaps more.[3] Hence, there exists a grave danger that Mr. Hari will be found guilty in the Minnesota Case based upon the as-yet unproved allegations from the Illinois Case rather than on the strength of the direct evidence tested by unfettered cross-examination. There is an equal risk that Mr. Hari might be later found guilty in the Illinois Case based upon a guilty verdict from the Minnesota Case wherein the defense was hobbled strategically by considerations of the effect of the Minnesota Case on the subsequent Illinois Case. In short, with these two separate yet inextricably related prosecutions, there is an inherent risk of impermissible prejudice that would yield guilty verdicts not based upon the strength of evidence, but rather by multiplicity of accusation and innuendo and an incomplete opportunity to assert a vigorous defense in the Minnesota Case.

Second, for similar reasons, the *de facto* severance imposes an undue burden upon Defendant Hari's right to testify at trial, should he elect to do so. Consider a scenario during trial of the Minnesota Case, where the government presents evidence of Defendant Hari's alleged participation in the Dar al Farooq bombing during its case-in-chief, as well as the putative Other-Acts presentation involving allegations at issue in the

---

[3] Though it may go without saying, the defense does not speak for the government as to what evidence will or will not be offered by the prosecution at trial. However, at least in the informal stages, prosecutors have indicated an intent to offer multiple allegations from the Illinois Case as Other-Acts evidence, or so-called "intrinsic" evidence, or under some as-yet-unknown evidentiary theory. Moreover, as the Court is no doubt aware, it is very common for prosecutors to offer such evidence at a criminal trial.

10

Illinois Case. Should Defendant Hari take the stand to deny involvement in the Dar al Farooq bombing, it is safe to predict the government will seek to cross-examine on not just that issue, but upon all manner of side issues involving the Illinois Case allegations as well. The jury will not be able to fully evaluate the strength or weakness of the Illinois Case allegations made as part of an Other Acts presentation, making the presumed cross-examination an exercise in vague innuendo and a prejudicial burden upon the right of the accused to testify. But if the charges in the Illinois Case are joined, then prosecutors will be compelled to make a full-and-fair evidentiary presentation about the Illinois Case allegations in the government's case-in-chief. Hence, any cross-examination on those topics will be substantive and answerable by the accused. Thus, under the unique posture of this case, the present *de facto* severance is unduly prejudicial to the rights of the accused, and can be cured by a transfer-and-joinder requested here.

Lastly, a number of authorities indicate that a defendant who deems a joinder in his best interests, generally ought to be granted such relief. *See, e.g.,* FRCrP 13 (permitting joint trial of separate cases). For example, literature promulgated by the American Bar Association states:

> *When a defendant has been charged with two or more related offenses which are within the jurisdiction of the same court, a timely defense motion to join the offenses for trial <u>should be granted</u> unless the court determines that, because the prosecuting attorney does not have sufficient evidence to warrant trying some of the offenses at that time, or for some other reason, the ends of justice would be defeated if the motion were granted in whole or in part.*

*ABA Standards for Criminal Justice* § 13-2.3 (Westlaw 2d ed. 1980) (emphasis added). Here, for the above reasons, Mr. Hari strongly believes that a transfer-and-joinder would be in

the interest of justice. Moreover, a transfer-and-joinder would also address other considerations such as judicial economy, the convenience of witnesses, et cetera.

### IV. Conclusion

Mr. Hari respectfully suggests the Court that all the meaningful factors regarding a motion pursuant to Rule 21 of the Federal Rules of Criminal Procedure (FRCrP) strongly favor a transfer to the District of Minnesota. It is inefficient and wasteful to conduct two separate trials, one in Minnesota and another in Illinois. Even more critically, perpetuating these dual prosecutions has dire implications for Mr. Hari's ability to present a vigorous defense and for the administration of justice. Accordingly, Mr. Hari requests that the Court transfer the Illinois Case to the District of Minnesota.

| | |
|---|---|
| /s/Elisabeth R. Pollock | /s/ Thomas W. Patton |
| Assistant Federal Defender | Federal Public Defender |
| 300 West Main Street | 401 Main Street, Suite 1500 |
| Urbana, IL 61801 | Peoria, IL 61602 |
| Phone: 217-373-0666 | Phone: 309-671-7891 |
| FAX:   217-373-0667 | Fax:    309-671-7898 |
| Email: Elisabeth_Pollock@fd.org | Email: Thomas_Patton@fd.org |

CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorney Eugene L. Miller. A copy was also mailed to the defendant.

/s/ Thomas W. Patton
Federal Public Defender
401 Main Street, Suite 1500
Peoria, IL 61602
Phone: 309-671-7891
Fax:    309-671-7898
Email: Thomas_Patton@fd.org